IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JAMES CURNEL, | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:12-CV-058-Y |
| | § | |
| RICK THALER, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
|     Respondent. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

#### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

#### B. PARTIES

Petitioner James Curnel, TDCJ-ID #1525311, is in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Abilene, Texas.

Respondent Rick Thaler is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

## C. Factual and Procedural History

On August 21, 2008, petitioner was convicted by a jury of capital murder in cause number 1058092D in the Criminal District Court Number Three of Tarrant County, Texas, and the trial court sentenced him to mandatory life imprisonment without parole. (State Habeas R. at 135[1]) Petitioner appealed his conviction, but the Second District Court of Appeals of Texas affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review. *Curnel v. State*, No. 2-08-308-CR, slip op., 2010 WL 323557 (Tex. App.–Fort Worth Feb. 3, 2010) (not designated for publication); *Curnel v. State*, PDR No. 274-10. Petitioner also filed a state application for writ of habeas corpus, raising one or more of the claims presented herein, which was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court. (State Habeas R. at cover) This federal petition for writ of habeas corpus followed.

The state appellate court summarized the facts of the case as follows:

> Cavit Sevenler owned a moving truck. He and his helper Walter Oriana picked up a load near Grand Prairie on January 11, 2007, and they parked the truck in a motel parking lot in Grand Prairie for the night. Sevenler was on his laptop talking to one of his two young daughters when three black men approached his truck and one asked to borrow a phone. Oriana told Sevenler to roll up the window because he "felt like something was going to happen." The men asked to borrow a phone again, cussed, and then left. Oriana went to the sleeping compartment of the truck for the night. Shortly thereafter, Oriana heard a gunshot and heard Sevenler call for him. Oriana went to the front of the truck and saw that Sevenler had been shot. He ran to the road and flagged down a police officer.
>
> An eyewitness told police that she had seen four black men leaving the scene in a white Ford Taurus with license plate number H20 RLV. Video surveillance from the motel showed several men getting out of and back into a Ford Taurus in the parking lot. The video did not capture the shooting.

---

[1]"State Habeas R." refers to the state court record in petitioner's state habeas application no. WR-76,827-01.

The day after the shooting, Detective Heath Wester, the detective assigned to the case, received a call from an anonymous tipster giving him an address for a duplex in Arlington. Detective Wester, along with three other detectives, went to the address. They found a white Ford Taurus with license plate number H20 RYV, one digit different than the license plate number given by the eyewitness, parked in the duplex's parking lot. Emanuel Phillips lived at the address given to Detective Wester. Phillips answered the door and immediately began telling the detectives about the shooting, without any questioning from the detectives. While talking to the detectives, Phillips saw Curnel and Chris Johnson leaving the duplex next door, and he pointed out the two men to the detectives. Johnson's mother owned the duplex next door to Phillips's, and Curnel had been staying there with Johnson.

The detectives arrested Phillips, Curnel, and Johnson. Police found shotgun shells and a box of ammunition under a mattress in Johnson's home. They found paperwork belonging to Johnson's cousin, Toborish Roberson, next to the mattress. The police also arrested Roberson.

Detective Wester interviewed Johnson, Roberson, and Phillips, and all three men said that Curnel was the shooter. Johnson told officers that the murder weapon, a shotgun belonging to Curnel, was hidden inside a mattress in Johnson's duplex. Police obtained a search warrant and searched Johnson's home a second time; they found a silver single-shot twelve-gauge shotgun inside a mattress in Johnson's bedroom, where Curnel and Johnson slept.

Detective Wester compiled two photospreads, one containing Johnson's photo and one containing Curnel's photo. Oriana identified both men from the photospreads. Curnel was indicted for capital murder for shooting Sevenler "in the course of committing or attempting to commit the offense of robbery of Cavit Sevenler."

At Curnel's trial, Phillips testified that he had been at Johnson's duplex on the day of the shooting watching the movie *Killa Season* with Johnson, Curnel, and Roberson. Johnson, Phillips, and Roberson were smoking marijuana, although Phillips did not recall Curnel smoking. The four men decided to go exchange Curnel's shotgun for a pistol. They took Phillips's Ford Taurus to meet another man at a motel to trade the guns. The man was not at the motel so they decided to drive around until he returned. Phillips explained at trial that they saw a man walking and decided to "jack him"; when they approached, the man started acting scared so they decided to leave. They then drove to the motel where Sevenler's truck was parked and saw Sevenler in the cab with his laptop open. Phillips testified that Curnel said, "That's a lick," which means an easy robbery or "fast cash." The men parked and tried to come up with a plan to rob Sevenler. Curnel, Roberson, and Johnson walked up to the truck while Phillips stayed by the car; Curnel had the shotgun. Phillips had

3

only taken a few steps away from the car when he heard the gunshot, and everyone ran back to the car. Curnel said, "He's dead. He's dead," and "I know how to hit a lick, and that's how you do it in the movies." Phillips testified that he was originally arrested for capital murder in connection with Sevenler's death but that he agreed to testify for the State in exchange for a ten-year sentence for aggravated robbery.

      Johnson also testified against Phillips in exchange for a twelve-year sentence for aggravated robbery. He testified that Curnel had been staying with him for several months; they shared a bunkbed in Johnson's room. He testified that he, Curnel, Phillips, and Roberson were watching *Killa Season,* smoking weed, and talking about getting away with murder on the day of the incident. They left to exchange Curnel's shotgun for a pistol, and while driving around, a man stopped them and asked if they had any drugs. They then saw Sevenler inside his truck. Curnel said it was "a lick"; when asked what "a lick" means, Johnson testified that it could mean "numerous things" and that, in that particular situation, he "didn't think of it meaning anything." He said that the "last thing on [his] mind was robbery." He explained that after they parked at the motel, everyone but Phillips got out, "James shot the gun; we all left." Laurel Hall testified that she lives near Johnson's duplex, that she has known Johnson since elementary school, and that she was friends with Curnel. She testified that on the night that Sevenler was shot, Curnel went to her house and told her that he had shot somebody. A letter that Curnel wrote Hall while in jail was also introduced at trial. In the letter, Curnel wrote, "I don't know if its true or not but word is lil Chris [Johnson] ain't the only sni[t]ch." Hall testified that she was upset because she thought Curnel was suggesting that she "was snitching" even though she had not talked to police. Additionally, Hall and Hall's mother both testified that when Curnel went to their house that night, he wanted to watch Channel 4 news because "they pick up things real quick."

      Curnel called Aaron Russell to testify on his behalf. Russell testified that he and Curnel are friends and that he saw Curnel on the night of Sevenler's death. Curnel was upset and told Russell that he could not tell him the whole story but that "someone was killed, and there was a robbery." Russell also testified that Johnson had told him that Curnel was in jail for something he did not do.

      Scotty Bryant also testified for the defense. He testified that he had been in jail with Johnson and that Johnson had confided to him that he was the one who shot Sevenler "just to prove that he could kill somebody."

(State Habeas R. at 140-44)

4

D. ISSUES

Petitioner brings four grounds for habeas relief, in which he claims trial counsel rendered ineffective assistance (grounds one through three) and his right to due process was violated by the state's knowing use of perjured testimony (ground four). (Pet. at 6-7d)

E. RULE 5 STATEMENT

Respondent believes that the petition is neither time-barred nor successive and that petitioner has sufficiently exhausted his claims, as required by 28 U.S.C. § 2254(b)(1). (Resp't Ans. at 6)

F. DISCUSSION

*1. Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

Further, federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. 28 U.S.C. § 2254(e)(1). Factual determinations by a state court are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2), (e); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams*, 529 U.S. at 399. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written opinion, it is an adjudication on the merits, which is entitled to this presumption. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

### 2. *Ineffective Assistance of Counsel*

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). An ineffective assistance claim is governed by the standards set forth in *Strickland v. Washington*. 466 U.S. at 668. To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Id.* at 688.

A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the

distorting effects of hindsight. *Id.* at 689. Strategic choices made by counsel after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *Id.* at 690.

Where, as here, a petitioner's ineffective assistance claims have been reviewed on the merits under the *Strickland* standard and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of *Strickland*, or if the state courts' decision is based on an unreasonable determination of the facts in light of the evidence before the state court. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Haynes v. Cain*, 298 F.3d 375, 379-82 (5th Cir. 2002). Under this standard, the state court's application of *Strickland* must be shown to be not only erroneous, but objectively unreasonable. *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003).

Petitioner claims trial counsel rendered ineffective assistance by failing to (1) seek out and interview Toniqua Ware, (2) to interview his co-defendant Emanuel Phillips, and (3) to request an accomplice-witness instruction be given to the jury. (Pet. at 6-7c; Pet'r Mem. at 12-24)

As to the first two claims, the state habeas court entered the following relevant findings of fact:

> 4.  Hon. John Harding and Hon. Harry Harris represented Applicant during the trial proceedings.
>
> 5.  Applicant presents an unsigned affidavit from "Toniqua Ware."
>
> 6.  Applicant does not attach an affidavit or statement from Emanuel Phillips.
>
> 7.  Applicant presents no evidence to support his claim that counsel failed to seek-out and interview witnesses.

8. Hon. Harding completed over seventy-nine hours of out of court time in this case.

9. Hon. Harding's investigator completed over forty-three hours of investigation on counsel's behalf.

10. Hon. Harding's investigator spent over six hours attempting to locate and interview witnesses.

11. There is evidence that counsel and his investigator thoroughly investigated this case.

12. There is no evidence that counsel was unaware of Toniqua Ware.

13. Applicant alleged that Toniqua Ware would have testified as follows:

   a. When she was not home, Applicant came over to her house;
   b. Applicant came to her house on the night of the murder after the victim was killed;
   c. An unnamed person was at her house when Applicant arrived;
   d. Applicant told unnamed person that Christopher Johnson committed the murder.

14. If accepting Applicant's claims as true, Toniqua Ware did not have personal knowledge that Applicant was at her house on the night of the murder.

15. If accepting Applicant's claims as true, Toniqua Ware did not have personal knowledge that Christopher Johnson committed the murder.

16. Applicant does not allege that the testimony of Toniqua Ware fell under a hearsay exception.

17. Neither Applicant nor the unsigned Toniqua Ware affidavit allege the name of the unnamed person who was at her house when Applicant arrived.

18. There is no evidence that Hon. Harding's representation was deficient because he did not call Toniqua Ware to testify.

19. There is no evidence that Emanuel Phillips ("Phillips") would have talked to Hon. Harding.

20. Phillips was represented by Hon. Joetta Keene.

21. On May 12, 2008, Phillips accepted a plea agreement of ten years confinement in exchange for his testimony against Applicant.

22. Had Phillips testified on Applicant's behalf, and contrary to his testimony at his plea hearing, he would have violated the terms of his plea agreement.

23. Phillips testified during his plea hearing that he understood that his testimony against Applicant was part of his plea agreement and that he was comfortable with it.

24. Applicant's counsel received access to the transcript of Phillips' plea hearing on May 14, 2008.

25. There is no evidence that Emanuel Phillips would have testified on Applicant's behalf if Hon. Harding had contacted him.

26. There is no evidence that Hon. Harding's representation fell below an objective standard of reasonableness.

27. No affidavit from Hon. Harding is needed because there is a plausible basis in strategy or tactics for his actions.

(State Habeas R. at 125-26) (record citations omitted)

Based on its findings, and applying the *Strickland* standard, the court entered the following relevant legal conclusions:

8. Applicant has failed to prove that counsel failed to seek out and interview witnesses.

9. Applicant has failed to prove that counsel did not contact Toniqua Ware.

10. Applicant has failed to prove that the testimony of Toniqua Ware was exculpatory.

11. Because there is a plausible basis in strategy for counsel not calling Toniqua Ware to testify, a full inquiry into the strategy or tactics of counsel is not needed.

12. Applicant has failed to prove that Emanuel Phillips would have talked with counsel.

13. Applicant has failed to prove Emanuel Phillips would have provided beneficial testimony had counsel contacted him.

14. Because there is a plausible basis in strategy for counsel not contacting Emanuel Phillips, a full inquiry into the strategy or tactics of counsel is not needed.

15. Applicant has failed to prove that his trial counsel's representation fell below an objective standard of reasonableness.

. . .

17. Applicant has failed to prove that a reasonable probability exists that the outcome of the proceeding would have been different had counsel interviewed more witnesses.

18. Applicant has failed to prove that a reasonable probability exists that the outcome of the proceeding would have been different had counsel contacted Toniqua Ware.

19. Applicant has failed to prove that a reasonable probability exists that the outcome of the proceeding would have been different had counsel contacted Emanuel Phillips.

20. Applicant has failed to show that there is a reasonable probability that, but for the alleged acts of misconduct, the result of the proceeding would be different.

(*Id.* at 128-29) (citations omitted)

The Texas Court of Criminal Appeals denied relief based upon the habeas court's findings. This constitutes an adjudication on the merits of the claims and is entitled to the presumption of correctness, absent clear and convincing evidence in rebuttal. 28 U.S.C. § 2254(e)(1). While petitioner asserts that Ware's and Phillips's testimony would have been beneficial to him and that they would have testified on his behalf if asked, he does not support his assertion. *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981) (providing that uncalled witness complaints are not favored because of the speculative nature of the alleged testimony and trial strategy that occurs). Contrary

to his assertion, petitioner did not provide affidavits executed by either of the two witnesses stating their willingness to testify and the content of their testimony. Conclusory allegations regarding the content of uncalled witnesses' testimony are insufficient to demonstrate ineffective assistance. *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). The state courts' determination of these issues was neither erroneous nor unreasonable under *Strickland*.

As to petitioner's third claim, in Texas, a person cannot be convicted on the testimony of accomplices alone; there must also be corroborating evidence to connect the defendant with the offense committed. TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005). Petitioner asserts counsel was ineffective by failing to request an accomplice-witness instruction be included in the jury charge because, absent the testimony of Phillips and Johnson, there was no other evidence to connect him to robbery or attempted robbery in the course of a murder as required to establish guilt for capital murder. (Pet. at 7-7c)

The state appellate court considered this issue in the context of petitioner's claim on appeal that the trial court erred by failing to include an accomplice-witness instruction in the jury charge and by denying his motion for an instructed verdict. (State Habeas R. At 145-53) The court concluded that the "corroborating non-accomplice evidence sufficiently tended to connect Curnel to the offense," and, specifically, that "Russell's testimony–that Curnel had told him 'someone was killed, and there was a robbery' does connect Curnel with robbery." (*Id.* At

Having so decided, and applying *Strickland*, the state appellate court addressed petitioner's ineffective assistance claim as follows:

> In *Davis v. State,* the court of criminal appeals discussed the appropriate analysis for an ineffective assistance claim in which defense counsel failed to request an accomplice-witness instruction. The court held that the issue of prejudice "will generally turn on whether there was a substantial amount of non-accomplice evidence

11

and whether the record reveals any rational basis on which the jury could have doubted or disregarded that evidence."

> In this case, we need not address whether, under the first *Strickland* prong, Curnel's attorney was ineffective for not requesting an accomplice-witness instruction because Curnel has not satisfied the second *Strickland* prong. As we explained above, the non-accomplice evidence, if believed, established that Curnel admitted to Hall that he had killed someone and wrote her a letter suggesting that someone "snitch[ed]," that Oriana identified Curnel as one of the men who approached Sevenler's truck immediately before Sevenler was shot, that a videotape showed four men in a Ford Taurus at the scene of the crime, that an eyewitness reported four black men at the scene in a white Ford Taurus, that police found a shotgun in the room where Curnel slept, that Curnel told Hall and her mother to turn the television to Channel 8 because "they pick up things real quick," and that Curnel nervously told Russell that someone was killed and there was a robbery.
>
> As detailed above, the record reflects a significant amount of non-accomplice evidence that tended to connect Curnel to the offense committed. Furthermore, the record reveals no rational basis on which the jury could have doubted or disregarded that evidence. We find no reasonable probability that, but for counsel's alleged deficient performance, the result of the guilt-innocence stage would have been different.

(State Habeas R. at 153-56) (citations omitted)

Having reviewed the record in its entirety, and deferring to the state court's finding that the verdict was supported by sufficient non-accomplice evidence, the state court's determination is neither erroneous nor objectively unreasonable under *Strickland*. *Fierro v. Lynaugh*, 879 F.2d 1276, 1278 (5th Cir. 1989). Petitioner has not shown he is entitled to relief with regard to grounds one through three.

### 3. *Perjured Testimony*

In his fourth claim, petitioner asserts his right to due process was violated by the state's knowing use of perjured testimony. According to petitioner, the prosecutor threatened both Phillips and Johnson into committing perjury. (Pet. at 7, 7d; Pet'r Mem. at 25-28)

The state habeas court entered the following relevant findings of fact on the issue:

32. Applicant presents no evidence to support his claim that the prosecutor threatened his co-defendants into testifying.

33. The prosecutor offered his co-defendants plea agreements in exchange for their testimony.

34. Emanuel Phillips testified that he was not "uncomfortable" nor did he want to "change" any of the information he provided as part of his plea.

35. Christopher Johnson testified that he wasn't "forced" into accepting the plea agreement.

36. There is no evidence that the State forced Applicant's co-defendants into testifying against him.

37. There is no evidence that Applicant's co-defendants committed perjury.

38. There is no evidence that the State knowingly used perjured testimony to convict him.

(State Habeas R. At 127)

Based on its findings, the state court concluded there was no due process violation. (*Id.* at 130) In turn, the Texas Court of Criminal Appeals denied relief based upon the habeas court's findings. As previously noted, this constitutes an adjudication on the merits of the claims and is entitled to the presumption of correctness, absent clear and convincing evidence in rebuttal.

To establish entitlement to habeas relief on this issue, a petitioner must show that: (1) the witness's testimony was false or perjured; (2) the testimony was material to petitioner's conviction or sentence, and (3) the prosecution knew that the testimony was false or perjured. *May v. Collins*, 955 F.2d 299, 315 (5th Cir. 1992) (citing *Giglio v. United States*, 405 U.S. 150, 153-54 (1972)). Petitioner's wholly conclusory and unsupported allegations fail to show the state suborned or

13

attempted to suborn perjury. *Ross*, 694 F.2d at 1011. Petitioner has not shown he is entitled to relief with regard to ground four.

### 4. Evidentiary Hearing

Petitioner requests an evidentiary hearing to further develop the record in support of his claims, however federal habeas review of state-court proceedings are limited to the record before the state court that adjudicated the claims on the merits. *Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1398-1401 (2011). Petitioner's claims were adjudicated on the merits in state court, and he has failed to overcome the limitation of § 2254(d)(1) on the record that was before the state court. *Id.*

## II. RECOMMENDATION

Based on the foregoing, it is recommended that petitioner's petition for writ of habeas corpus be denied.

### III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until September __19__, 2012. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed

determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## IV. ORDER

Under 28 U.S.C. § 636, it is ordered that each party is granted until September __19__, 2012, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ordered that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ordered that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED August __30__, 2012.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE